AF Approval [signature]                                        Chief Approval [signature]

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

    v.                              CASE NO. 8:21-cr-218-CEH-AAS

JOSHUA FISHER,
       a/k/a "HAMMER"

**PLEA AGREEMENT**

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Roger B. Handberg, United States Attorney for the Middle District of Florida, and the defendant, Joshua Fisher, and the attorney for the defendant, Jeffrey Brown, Esq., mutually agree as follows:

A.    **Particularized Terms**

    1.    <u>Count(s) Pleading To</u>

The defendant shall enter a plea of guilty to Counts Two, Four, Five, and Seven of the Indictment. Count Two charges the defendant with committing assault in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(3). Counts Four, Five, and Seven charge the defendant with knowingly and unlawfully conspiring to commit assault in aid of racketeering activity, in violation of 18 U.S.C. § 1959(a)(6).

    2.    <u>Maximum Penalties</u>

Count Two carries a maximum sentence of 20 years in prison, a fine not to exceed $250,000, a term of supervised release not to exceed three years, and a special assessment of $100.

Defendant's Initials JRF

Counts Four, Five, and Seven carry maximum sentences of three years in prison, fines not to exceed $250,000, terms of supervised release not to exceed one year, and special assessments of $100.

With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offense(s), and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense(s), or to the community, as set forth below.

3. Elements of the Offense

The defendant acknowledges understanding the nature and elements of the offenses with which the defendant has been charged and to which the defendant is pleading guilty.

The elements of Count Two (Assault in Aid of Racketeering) are:

First: The Unforgiven was an "enterprise" as defined in 18 U.S.C. § 1959(b)(2);

Second: The enterprise engaged in, or its activities affected, interstate or foreign commerce;

Third: The enterprise, through its members and associates, engaged in "racketeering activity" as defined in 18 U.S.C. §§ 1959(b)(1) and 1961(1);

Fourth: The defendant committed a crime of violence, specifically, Assault with Deadly Weapon or With Serious Bodily Injury (Count Two), or Kidnapping (Count Three), which violated either state or federal law; and

Fifth: The crime of violence was for the purpose of gaining entrance to or maintaining or increasing position in the enterprise.

Defendant's Initials JRF

2

The elements of Counts Four, Five, and Seven (Conspiracy to Commit Assault in Aid of Racketeering) are:

First: The Unforgiven was an "enterprise" as defined in 18 U.S.C. § 1959(b)(2);

Second: The enterprise engaged in, or its activities affected, interstate or foreign commerce;

Third: The enterprise, through its members and associates, engaged in "racketeering activity" as defined in 18 U.S.C. §§ 1959(b)(1) and 1961(1);

Fourth: the defendant conspired to commit one of the following crimes of violence which violated either state or federal law:

    a. Assault with a Dangerous Weapon, or
    b. Assault Resulting in Serious Bodily Injury; and

Fifth: The crime of violence was for the purpose of gaining entrance to or maintaining or increasing position in the enterprise.

4. <u>Counts Dismissed</u>

At the time of sentencing, the remaining count against the defendant, Count Three, will be dismissed pursuant to Fed. R. Crim. P. 11(c)(1)(A).

5. <u>Agreement as to Sentencing</u>

The parties agree that the sentence of each count to which the defendant is pleading guilty should be run consecutively to that of each other count.

Defendant's Initials 

3

6. <u>No Further Charges</u>

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

7. <u>Guidelines Sentence</u>

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement. The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

8. <u>Acceptance of Responsibility - Three Levels</u>

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will not oppose the defendant's request to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG

Defendant's Initials 

4

§3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

**B.** **Standard Terms and Conditions**

1. Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such

Defendant's Initials JRF

5

counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. The special assessment is due on the date of sentencing.

The defendant understands that this agreement imposes no limitation as to fine.

2. <u>Supervised Release</u>

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3. <u>Immigration Consequences of Pleading Guilty</u>

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

Defendant's Initials JR/c

6

4. Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5. Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five

Defendant's Initials JNF

years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6. Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government

Defendant's Initials JRF

8

expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7. Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8. Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

Defendant's Initials _JN_

9

9. <u>Filing of Agreement</u>

This agreement shall be presented to the Court, in open court or <u>in camera</u>, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10. <u>Voluntariness</u>

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant

Defendant's Initials _JAF_

10

questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11. Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth below are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

## FACTS

Prior to the events described in the Counts of the Indictment in this case, and continuing until at least up to and including the date of the Indictment, the defendants and others were members and associates of The Unforgiven, a violent, white-supremacist organization, whose activities affected interstate and foreign commerce (the Enterprise). The Enterprise had the purposes, and used the means and methods, described in the "Introduction" of the Indictment.

The Enterprise, through its members and associates, engaged in racketeering activity as defined in 18 U.S.C. §§ 1959(b)(1) and 1961(1), namely:

Defendant's Initials JNC

11

    a. acts and threats involving murder, in violation of Sections 782.04, 777.011, and 777.04 of the Florida Statutes;

    b. acts and threats involving kidnapping, in violation of Sections 787.01(1)(a), 777.011, and 777.04 of the Florida Statutes;

    c. acts involving robbery, in violation of Sections 812.13(1) and 777.011 the Florida Statutes;

acts indictable under the following provisions of federal law, including:

    d. 18 U.S.C. § 1503 (relating to obstruction of justice); and

    e. 18 U.S.C. § 1512 (relating to tampering with witnesses, victims, or informants);

and offenses involving the felonious manufacture, receiving, concealment, buying, selling, and otherwise dealing in controlled substances or listed chemicals, in violation of:

    f. 21 U.S.C. § 841 (distributing and possessing with intent to distribute controlled substances); and

    g. 21 U.S.C. § 846 (conspiracy and attempt to distribute and possess with intent to distribute controlled substances).

Unforgiven members often used Florida Department of Corrections Officials to smuggle in controlled substances and other contraband for incarcerated members of the Unforgiven and to facilitate or commit acts of violence. Correctional Officers also used Unforgiven members to commit acts of violence on their behalf.

    The Enterprise committed violence against perceived racial enemies, as well as its own members who failed to abide the Enterprise's constitution and by-laws (its code). The Enterprise viewed cooperation with law enforcement as one of the most

12

Defendant's Initials JNC

serious violations of its code, and one which required extreme punishment.

The Enterprise often revoked the membership of those who violated its code with extreme violence, including by forcibly defacing the member's patch tattoos or otherwise violently mutilating the "kill zone" areas of the bodies bearing those patch tattoos.

Defendant Joshua Fisher was a member of the Council—the state-wide leadership—of the Unforgiven.

### Count Two

On January 19, 2019, the defendant participated in an aggravated assault which resulted in serious bodily injury. Levi Sharp hosted a state-wide Unforgiven meeting at his home in Satsuma, Florida. The night before the meeting, Maverick Maher informed members that they would need to take C.L.'s patch. So, the defendant, Sharp, Maher, George Andrews, and others beat Unforgiven member C.L., ostensibly for C.L.'s violation of Unforgiven rules. The beating knocked out C.L.'s teeth, gave him a concussion, and caused him to repeatedly lose consciousness. While C.L. was held down, Maher forcibly tattooed black ink stains over C.L.'s tattoos. The defendant urinated on C.L.'s head. During the beating, the defendant brandished a firearm. *[handwritten: Fisher reserves the right to object to Brandishing F/A.]*

C.L. was then placed into the defendant's truck with the defendant and Sharp. The defendant began driving toward the woods. C.L., believing that the defendant *[handwritten: Fisher reserves the right to object to "jumping"]* and Sharp intended to kill him, jumped from the truck and escaped.

Defendant's Initials  JRF

13

C.L. was held against his will and understood that he was not free to go, either and at the residence and during the transport. Later, the defendant claimed to the Council that he would have killed C.L. if they had not been at Sharp's house.

### Count Four

Between in or around January 2019 and continuing until at least in or around July 2019, in the Middle District of Florida and elsewhere, the defendant, along with Maverick Maher, Ryan Mclaughlin, George Andrews, II, James Mapoles, Ryann Howard, David Howell, Darrin Terranova, Steve Anderson, and William Walker, discussed, and voted that members of the Unforgiven would commit a violent assault on T.B. Specifically members voted to forcibly remove T.B.'s Unforgiven tattoo (placed on his neck), and a tattoo on T.B.'s wife. Howell suggested taking T.B.'s wife's tattoo "completely off." The planned assault was in response to allegations that T.B. had violated the rules of the Unforgiven and supported the leadership of a prior enterprise President. During the discussion, members made clear that revoking T.B.'s membership would likely require violence and possibly even the murder of T.B.

### Count Five

On or about February 1, 2019, the defendant and McLaughlin, along with other members of the Unforgiven Council, conspired to ride through Pasco County to commit extreme violence against the Aryan Brotherhood. The defendant specifically proposed "bustin bitches' knee caps," "busting bitches' heads wide open," and "smacking bitches in the mouth." The defendant held a large socket wrench up while

Defendant's Initials JRF

making these proposals. McLaughlin said that he was on "CRD" (community release), but that he loved the family and would go anywhere. He said that he would take a four-man wrecking crew," and an "all star team." Maverick Maher directed the Council to discuss the specific plans on a more secure messaging app, after which McLaughlin announced to the group that "the "Pasco shit is sealed up. I'll reach out to bros I want to come with me." In furtherance of the planned violence against the UAB, the defendant proposed talking to incarcerated members of the Unforgiven about having the UAB eradicated in prison, and getting UAB members "fucked up, sliced up, and covered up." The defendant proposed paying inmates to hurt UAB members "for the family." The defendant quoted Mein Kampf and said that the Unforgiven was not a debate club, but a club of action.

### Count Seven

On or around February 11, 2019, the defendant, along with Maverick Maher, Steve Anderson, and James Mapoles discussed violently revoking the patch of H.W. Mapoles called for removing H.W.'s patch. Anderson noted that, because H.W. still supported a prior president of the Unforgiven (who was ousted for his hesitancy to commit violence), Anderson himself was ready to commit acts of violence against H.W.

The above is merely a brief summary of the events, some of the persons involved, and other information relating to this case and does not include, nor is it intended to include, all of the events, persons involved, or other information relating to this case.

Defendant's Initials JRC

15

Case 8:21-cr-00218-WFJ-AAS   Document 447   Filed 03/04/22   Page 16 of 16 PageID 1655

12. **Entire Agreement**

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

13. **Certification**

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this 26 day of January, 2022.

_____
Joshua Fisher
Defendant

_____
Jeffrey Brown, Esq.
Attorney for Defendant

ROGER B. HANDBERG
United States Attorney

_____
Samantha E. Beckman
Assistant United States Attorney

_____
James C. Preston, Jr.
Assistant United States Attorney
Chief, Violent Crimes and
Narcotics Section (Acting)

16